**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-00992-DME-CBS

JAMES ALLEN LOVELL and MONICA K. LOVELL,

Plaintiffs,

v.

DAVID W. MILLER, M.D.,

Defendant.

---

# ORDER

---

Before the Court are cross motions for partial summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiffs, James Allen Lovell and his wife, Monica K. Lovell, both New Mexico citizens, sued Defendant, Dr. James W. Miller, M.D., a Colorado citizen, seeking damages for alleged medical malpractice relating to an operation Dr. Miller performed on Mr. Lovell. The Lovells have moved for summary judgment as to Dr. Miller's asserted affirmative defense of third-party fault (Doc. 69), while Dr. Miller has moved for summary judgment as to the Lovells' claims for damages associated with Mr. Lovell's back pain (Doc. 71). Exercising diversity jurisdiction under 28 U.S.C. § 1332, the Court hereby GRANTS Dr. Miller's motion and DENIES as moot the Lovells' motion.

## BACKGROUND

In December 2007, Mr. Lovell was involved in a workplace accident that resulted in a back injury. On May 2, 2008, Dr. Miller performed surgery on Mr. Lovell's lower back in order to remove herniated disc material and relieve the compression of a spinal nerve (his "L5 nerve root"), which had caused Mr. Lovell pain, numbness, and weakness in his right leg. Immediately after the surgery, Mr. Lovell experienced additional weakness in his right leg. The relevant procedural background of this litigation follows below.

On April 30, 2010, the Lovells filed a medical malpractice complaint against Dr. Miller, claiming that Dr. Miller negligently injured Mr. Lovell's L5 nerve root during surgery or, alternatively, negligently failed to treat Mr. Lovell's post-operative bleeding. The Lovells claim that Dr. Miller's negligent care caused Mr. Lovell's foot drop condition,[1] which impairs Mr. Lovell's gait and posture and renders him permanently physically disabled. The Lovells also claim that Dr. Miller's negligent care aggravated Mr. Lovell's preexisting back condition. Accordingly, the Lovells seek compensatory damages for medical expenses, loss of income, and non-economic damages such as pain and suffering, impairment of Mr. Lovell's quality of life, and impairment of Mrs. Lovell's right to the society of her husband.

Dr. Miller admits to treating Mr. Lovell in attempt to relieve Mr. Lovell's radicular symptoms and L5 nerve root weakness associated with his herniated disc.

---

[1] At times, in the record and briefs, this condition is referred to as "drop foot" instead of "foot drop." The terms appear to be interchangeable, but for the sake of consistency, this Order will use the term "foot drop," which appears to be the more common term.

However, he notes that the surgery he performed was not intended to address Mr. Lovell's pre-existing back pain. Dr. Miller denies that he was negligent in treating Mr. Lovell and notes that the increased L5 nerve root weakness that resulted from the surgery is a known potential complication of the procedure, and one that he disclosed to Mr. Lovell as a risk. Dr. Miller also denies that Mr. Lovell's continued back pain is related to the surgery.

On July 30, 2010, a scheduling conference was held in which Magistrate Judge Shaffer ordered that affirmative experts be designated by November 1, 2010, and discovery be completed by February 1, 2011. A final pretrial conference was set for March 31, 2011. On October 22, 2010, however, the Lovells moved to stay proceedings, asserting that medical facts and information regarding essential issues for trial, including a diagnostic evaluation to identify the actual or likely cause of Mr. Lovell's severe back pain since Dr. Miller's surgery, were not currently available. That same day, the Lovells also moved to strike the notice of non-party fault that Dr. Miller had filed and in which he had asserted that U.S. Transport, Inc., Mr. Lovell's former employer, contributed to the injuries alleged in this case.

On December 10, 2010, Magistrate Judge Shaffer denied without prejudice the Lovells' motion to stay, keeping the case's deadlines in place but staying all expert depositions; ordered that addenda to the scheduling order be submitted within ten days; and deferred ruling on the Lovells' motion to strike. On December 27, 2010, the magistrate judge ordered that all affirmative experts be designated and associated Fed. R. Civ. P. 26(a)(2) disclosures be made by January 20, 2011; pushed back the discovery

deadline to May 2, 2011; and the final pretrial conference to July 26, 2011. The magistrate judge noted, in that order, that the Lovells purported to reserve the right to supplement their disclosures after the January 20 affirmative expert deadline with information about Mr. Lovell's back condition, and that Dr. Miller opposed that purported reservation. On February 1, 2011, the magistrate judge denied without prejudice the Lovells' motion to strike Dr. Miller's notice of non-party fault, instructing the Lovells that they could challenge the merits of the designation through a Fed. R. Civ. P. 56 motion at the appropriate time.

On March 30, 2011, the Lovells moved to supplement their expert witness disclosures, seeking, inter alia, to permit the supplementation of the expert disclosure on the record by Dr. Henry G. Fieger, Jr., M.D., in order to reflect his review of medical information and records that did not exist as of the January 20, 2011, disclosure deadline. The Lovells anticipated that another doctor's reports as well as MRI results from further examination of Mr. Lovell would be submitted to Dr. Fieger for his evaluation. Dr. Miller opposed this motion, but on May 10, 2011, the magistrate judge granted it, ordering that the Lovells submit a final report from Dr. Fieger by May 18, and pushing back the discovery deadline once again, to July 29. It appears that the Lovells never did supplement the record with additional materials from Dr. Fieger. The deadline for dispositive motions was set for August 31, 2011.

A final pretrial conference was held on August 23, 2011, in which a ten-day jury trial was set for February 13, 2012, though the trial was later rescheduled to commence on September 4, 2012. On August 30, 2011, after the close of discovery, the Lovells

filed their present motion for partial summary judgment. The next day, Dr. Miller filed his present motion for partial summary judgment. Those motions are discussed below.

## DISCUSSION

### A. Legal standard

The Court shall grant summary judgment on a claim or defense if materials in the record show no genuine dispute as to any fact material to that issue, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. When applying this standard, the Court views the evidence, and draws reasonable inferences therefrom, in the light most favorable to the nonmovant. Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'" Id. Rather, the nonmovant must present facts such that a reasonable jury could find in his favor. Id. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006) (quotation marks, citation omitted).

In diversity cases such as this, "the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question whether judgment as a matter of law is appropriate." Haberman v. The Hartford Ins. Grp., 443 F.3d 1257, 1264 (10th Cir. 2006).

More specific legal standards are noted below as necessary.

**B. Analysis**

Of the parties' respective motions for summary judgment, it is prudent to address Dr. Miller's motion first. This is because Dr. Miller's motion pertains only to the Lovells' claims for damages relating to Mr. Lovell's back pain; and the Lovells' motion pertains to Dr. Miller's affirmative defense of third-party fault, which also relates only to Mr. Lovell's back pain. Because the Court grants Dr. Miller's motion, thereby foreclosing the Lovells' back pain claims, Dr. Miller's affirmative defense of third-party fault becomes moot, which in turn moots the Lovells' motion.

1) *Dr. Miller's motion*

Dr. Miller seeks summary judgment with respect to the Lovells' claims relating to Mr. Lovell's back pain, arguing that there is insufficient evidence to support a finding that the surgery performed by Dr. Miller caused Mr. Lovell's back pain. Dr. Miller asserts that the only evidence regarding causation on which the Lovells can rely are the statements of Dr. Fieger—apparently the only expert witness set to testify as to cause of Mr. Lovell's current back pain. Dr. Fieger is a medical doctor whose experience includes the diagnosis and treatment of spinal injuries. He has not personally examined Mr. Lovell but rather examined Mr. Lovell's medical reports, depositions, and other evidence from this case. Dr. Miller argues that Dr. Fieger's statements on the record about the cause of Mr. Lovell's back pain constitute mere speculation—an insufficient evidentiary basis to survive summary judgment.

Dr. Fieger's statements relevant to causation regarding Mr. Lovell's back pain are as follows: In an affidavit dated November 24, 2010, Dr. Fieger noted that an MRI from

February 2010 "d[id] not identify or indicate a cause or explanation for Mr. Lovell's continued and severe back pain." (Doc. 32-1 ¶ 17.) Dr. Fieger then asserted that "[i]t is very possible" that Mr. Lovell's back pain is caused by his foot drop condition and related changes in gait and posture, which are allegedly attributable to Dr. Miller's surgery on Mr. Lovell. (Id. ¶ 18.) Dr. Fieger also stated that the foot drop and related conditions "may be the cause of at least some of Mr. Lovell's back pain and may also have aggravated and continues [sic] to aggravate preexisting back pain." (Id. ¶ 19.) At the end of the affidavit, Dr. Fieger concluded that "Mr. Lovell's prognosis can only be determined after the . . . course of treatment [that Dr. Fieger recommends in the affidavit] has been provided and the results of the treatment are known." (Id. ¶ 24.)

Later, in a report dated January 18, 2011, in which Dr. Fieger outlined the opinions he would express as testimony in this case, he stated that "[c]urrently, adequate information is not available to determine the cause of Mr. Lovell's persisting back pain. Mr. Lovell needs a thorough diagnostic evaluation performed by a pain management clinic[, which] can help identify the cause of the persistent back pain." (Doc. 71-5 at 5.)

Finally, in his deposition on June 20, 2011, Dr. Fieger responded to the question, "Is it correct that it's not your intention to testify to as to the cause of Mr. Lovell's back pain?" by stating, "Only insofar as to say that he had it before the operation; that the [foot drop condition and the related abnormal gait] must be considered a component. But how important and to what extent, I cannot say." (Doc. 71-6 at 2.) Dr. Fieger then agreed that "the people who have actually examined him . . . are better suited to talk about the extent

to which, if at all, an abnormal gait is causing or contributing to [Mr. Lovell's] back pain." (Id.)

The Lovells have cited no other evidence on the record, and the Court independently discerns none, relevant to the Lovells' claims regarding Mr. Lovell's back pain. Indeed, in their terse response brief to Dr. Miller's motion for summary judgment, the Lovells hinge their argument against summary judgment exclusively on Dr. Fieger's statements in his initial affidavit, namely that it is "very possible" that Mr. Lovell's back pain is caused by the foot drop condition, and that that condition "may be the cause of at least some of Mr. Lovell's back pain." Those statements, the Lovells argue, are sufficient to create a triable issue of fact as to causation regarding back pain. The Lovells do not address Dr. Fieger's later admonition that "[c]urrently, adequate information is not available to determine the cause of Mr. Lovell's persisting back pain," nor do they acknowledge their failure to submit a final report from Dr. Fieger based on follow-up medical examination and testing, after the magistrate judge had granted extra time for that purpose.

Significantly, this failure to supplement the record with any report further evaluating the relationship between Mr. Lovell's foot drop and back pain came after the Lovells had represented to the Court, in a brief in support of their motion to stay proceedings, that "[c]urrently, no evidence is available that is probative of the critical issues of: . . . whether the injury to the L5 nerve root . . . and Mr. Lovell's resulting foot drop condition is a cause of some, if not all, of Mr. Lovell's back pain . . . ." (Doc. 32 ¶ 3 (emphasis added).) Also notably, that brief, in which the Lovells admitted that "no

evidence is available" vis-à-vis causation of Mr. Lovells' back pain, was the brief to which Dr. Fieger's original affidavit was attached—the same affidavit on which the Lovells now exclusively rely for the proposition that there is evidence on the record sufficient to create a genuine issue of fact with respect to back pain causation.

The question of causation in medical malpractice cases is "within the province of the fact-finder" and is therefore inappropriately decided at summary judgment "as long as the evidence establishes such facts and circumstances as would indicate with reasonable probability that causation exists." Kaiser Found. Health Plan of Colo. v. Sharp, 741 P.2d 714, 719 (Colo. 1987) (emphasis added, internal quotation marks omitted).

> To create a triable issue of fact regarding causation in a medical malpractice case, the plaintiff need not prove with absolute certainty that the defendant's conduct caused the plaintiff's harm, or establish that the defendant's negligence was the only cause of the injury suffered. . . . . However, the plaintiff must establish causation beyond mere possibility or speculation.

Id. (emphasis added, citation omitted). In Sharp, the Supreme Court of Colorado held that the plaintiffs had satisfied the "reasonable probability" threshold for withstanding the defendant's motion for summary judgment based on causation where the plaintiffs' expert stated in his affidavit that "it was more likely than not" that the patient's alleged harm was caused by the doctor's allegedly negligent care. Id. at 720.

Sharp was silent on whether a preponderance of likelihood, to which the expert had testified in that case, is necessary, as opposed to merely sufficient, to satisfy the "reasonable probability" standard for causation to survive summary judgment in medical malpractice cases. However, in a non-medical negligence case, the Colorado Court of Appeals later held that summary judgment for a defendant was proper when the

plaintiff's expert submitted merely that the defendant's alleged negligence "may have resulted in" the alleged harm. City of Westminster v. Centric-Jones Constructors, 100 P.3d 472, 485 (Colo. App. 2003). The court held that, even coming from an expert, "[t]estimony as to what may have happened does not create a genuine issue of material fact as to causation." Id. 485-86.

This Court doubts, but need not decide, whether the "very possible" and "may be the cause of at least some" statements on the record, especially coming from doctor who has not personally examined the plaintiff, would suffice, in a vacuum, to satisfy the "reasonable probability" standard of Sharp. It is clear from the rest of the record that the "reasonable probability" threshold has not been met, in any case, in light of Dr. Fieger's later express statement that there was insufficient medical data on which to determine the cause of Mr. Lovell's back pain, along with the Lovells' own representation to this Court—in the context of seeking extra time to supplement the record on this very point—that there was no probative evidence regarding the relationship between Mr. Lovell's foot drop and his back pain. Since the Lovells never subsequently submitted a follow-up report on this issue, the Court concludes that the causal link between Dr. Miller's alleged negligence and Mr. Lovell's back pain has only been established to the level of "mere possibility or speculation." Sharp, 741 P.2d at 719. Thus, as the Lovells have failed to present a triable issue of fact regarding causation, judgment for Dr. Miller is appropriate as a matter of law with respect to the Lovells' claims relating to back pain. The Court therefore grants Dr. Miller's motion for partial summary judgment.

2) *The Lovells' motion*

The Lovells seek summary judgment with respect to Dr. Miller's asserted affirmative defense of third-party fault. In support of their motion, the Lovells characterize Dr. Miller's designation of Mr. Lovell's former employer, U.S. Transport, as third-party tortfeasor, as an inappropriate attempt to prorate Dr. Miller's fault. The Lovells argue, essentially, that the question of whether U.S. Transport's earlier negligence created the condition for which Mr. Lovell sought treatment from Dr. Miller is irrelevant to the evaluation of the damages that allegedly ensued from Dr. Miller's medical negligence. That is, the Lovells recognize that the existence of a preexisting injury (e.g., Mr. Lovell's back pain, which may have arisen from his workplace accident) is relevant to causation and the apportionment of causal damages, i.e., that the Lovells need to show that Dr. Miller's surgery gave rise to new injuries (e.g., Mr. Lovell's foot drop condition) or worsened Mr. Lovell's preexisting condition, and that Dr. Miller would only be liable for the added damages, caused by his own malpractice. However, assuming the Lovells can prove causation of new or aggravated damages linked to Dr. Miller's treatment, the Lovells argue that Dr. Miller may not attempt to prorate his liability for those damages. Dr. Miller, in response, asserts that he invokes third-party fault only so as not to be held responsible for injuries that were not caused by alleged negligence. The Lovells reply that Dr. Miller is mixing "apples and oranges," confusing causal apportionment of damages with subsequent proration of liability.

It is not clear that the parties ultimately disagree about the extent of Dr. Miller's potential liability: both seem to agree that Dr. Miller would have to pay only for injuries

that are distinct from Mr. Lovell's preexisting condition and that the Lovells could prove were caused by Dr. Miller's medical negligence. For instance, the Lovells assert that

> Plaintiff must establish the aggravation of the pre-existing injury or some new injury caused by Defendant's negligence. That is the apportionment of causal damage. Once that aggravation or new injury is established, Defendant may not further apportion prorata fault to those remotely responsible for causing the underlying or pre-existing condition that necessitated the doctor's treatment. That remote conduct is not a legal or proximate cause of the Plaintiff's injuries caused by the malpracticing physician.

(Doc. 69 at 12.) Meanwhile, Dr. Miller asserts that

> [G]enuine issues of material fact exist regarding the cause of Mr. Lovell's back pain and Dr. Miller may not be held responsible for any portion of Plaintiffs' damages he did not cause. . . . The jury must therefore allocate liability [for Mr. Lovell's back pain] among all responsible parties and non-parties, including US Transport, as required by [Colorado's comparative negligence scheme].

(Doc. 79 at 10.) These characterizations are not necessarily inconsistent.

However, to the extent that the parties do dispute the proper application of the law governing negligence, causation, and apportionment and proration of damages, that dispute is mooted by the Court's grant of summary judgment to Dr. Miller on the back pain issue. This is because Dr. Miller invokes the defense of third-party fault only as to the Lovells' claims for damages related to Mr. Lovell's back pain, and not also to damages related to the alleged nerve injury and foot drop condition.

In Dr. Miller's response to the Lovells' motion for summary judgment, Dr. Miller emphasizes the distinction between the Lovells' claims for damages related to Mr. Lovell's foot drop condition and those related to his back pain: "Plaintiffs claim damages for two medical conditions: (1) a 'foot drop' condition allegedly caused by damage to Mr. Lovell's L5 nerve root during the surgery performed by Dr. Miller, and (2) severe

back pain . . . ." (Doc. 79 at 2.) Indeed, the Lovells' amended complaint distinguishes between damages stemming from Mr. Lovell's spinal nerve injury and related foot drop condition, on one hand, and damages stemming from the aggravation of his preexisting back condition, on the other hand, listing those allegations in separate paragraphs in reciting their claims for relief. (Compare Doc. 13 ¶ 11 (spinal injuries and foot drop) with id. ¶ 12 (back pain); id. ¶ 16 with ¶ 17 (same).)

Crucially, in Dr. Miller's response to the Lovells' motion, it is in regards to the back pain only that Dr. Miller invokes the affirmative defense of third-party negligence. (See, e.g., Doc. 79 at 4 ("That is, while Dr. Miller contends that he was not negligent during the surgical procedure he performed, he does not contend that US Transport is responsible for any alleged medical negligence either."); id. at 5 ("However, as to the second issue[,] involving back pain, Dr. Miller has submitted evidence that Mr. Lovell's back pain (as distinct from the foot drop condition) both pre-existed the discectomy performed by Dr. Miller and was not caused by it."); id. at 6 ("US Transport's negligence cannot be considered 'distinct and remote' to the cause of Mr. Lovell's back pain. . . . Dr. Miller simply wants the jury to be able to attribute the injury which was clearly caused by a third party to that third party rather than to him."); id. at 10 ("Plaintiffs seek compensation both for alleged medical malpractice by Dr. Miller, and also for Mr. Lovell's preexisting back pain which Dr. Miller did not cause. However, . . . Dr. Miller may not be held responsible for any portion of Plaintiffs' damages he did not cause.").) In fact, Dr. Miller expressly submits to this Court that "if the Court grants his motion [for partial summary judgment regarding Mr. Lovell's back pain claims], Plaintiffs' motion

[for partial summary judgment as to Dr. Miller's third-party fault defense] becomes moot because US Transport's role in causing Mr. Lovell's back pain is no longer an issue." (Id. at 5 n.2.)

In sum, Dr. Miller's assertion of U.S. Transport's negligence is relevant only to Mr. Lovell's back pain injury, as Dr. Miller does not assert the defense in regards to any non-back-pain damages. Thus, since the back pain issue has been resolved against the Lovells as a matter of law due to a lack of evidence regarding causation, Dr. Miller's affirmative defense of third-party fault, asserted only against the Lovells' claims for damages related to back pain, is moot. Consequently, the Lovells' present motion for summary judgment in regards to that affirmative defense is also moot. The Court therefore denies the Lovells' motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Dr. Miller's motion for partial summary judgment and DENIES as moot the Lovells' motion for partial summary judgment. The case shall otherwise proceed as set forth in the final pre-trial order.

Dated this 7th day of March, 2012.

BY THE COURT:

*s/ David M. Ebel*

______________________________

UNITED STATES DISTRICT COURT