**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-00992-DME-CBS

JAMES ALLEN LOVELL and MONICA K. LOVELL,

    Plaintiffs,

v.

DAVID W. MILLER, M.D.,

    Defendant.

---

**ORDER GRANTING JUDGMENT AS A MATTER OF LAW**

---

This matter came before the Court on Defendant David Miller's mid-trial motion for judgment as a matter of law (Doc. 114), see Fed. R. Civ. P. 50(a). The Court granted that motion from the bench, and now explains in greater detail why.

### I.  PLAINTIFFS' CLAIMS

Plaintiffs James and Monica Lovell alleged the following: Defendant Miller, a neurosurgeon, performed surgery on James Lovell's back, removing herniated lumbar disc material at the L4-L5 level. During or immediately after surgery, Mr. Lovell's L5 nerve root was injured, resulting in a condition referred to as "foot drop." That condition presented immediately after surgery and is now thought to be permanent. In this action, James Lovell seeks to recover damages, claiming the foot drop was caused by Dr. Miller's negligence. And Monica Lovell seeks to recover from Dr. Miller for her loss of Mr. Lovell's affection, society, companionship, and comfort due to his injury.

## II. STANDARD FOR RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

In a diversity case such as this one, federal law governs "the ultimate, procedural question [of] whether judgment as a matter of law is appropriate." Specialty Beverages, L.L.C. v. Pabst Brewing Co., 537 F.3d 1165, 1175 (10th Cir. 2008) (internal quotation marks omitted). Rule 50(a)(1), Fed. R. Civ. P., addresses judgments as a matter of law and provides the following:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A party can make a Rule 50(a)(1) motion any time before the case is submitted to the jury. See Fed. R. Civ. P. 50(a)(2).

Judgment as a matter of law is appropriate under Rule 50 "only if the evidence so overwhelmingly favors the moving party as to permit no other rational conclusion. In other words, the question is not whether there is literally no evidence supporting the nonmoving party, but whether there is evidence upon which the jury could properly find for that party." Specialty Beverages, 537 F.3d at 1175 (internal quotation marks, citations, alterations omitted). In addressing this question, the Court does not weigh evidence or make credibility determinations, and will draw all reasonable inferences in favor of the non-moving party, here the Lovells. See id.

### III.  DR. MILLER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF JAMES LOVELL'S NEGLIGENCE CLAIM

The parties agree that Colorado law governs Plaintiffs' substantive claims.  To recover under Colorado law for negligence in a medical malpractice case, Mr. Lovell had to prove, by a preponderance of the evidence, that Dr. Miller owed him a legal duty of care, Dr. Miller breached that duty, and Dr. Miller's breach of the duty of care caused Mr. Lovell injury.  See Day v. Johnson, 255 P.3d 1064, 1068-69, 1072 & n.7 (Colo. 2011).

"The standard of care in a medical malpractice action is measured by whether a reasonably careful physician of the same school of medicine as the defendant would have acted in the same manner as did the defendant in treating and caring for the plaintiff."  Melville v. Southward, 791 P.2d 383, 387 (Colo. 1990).  "Unless the subject matter of a medical malpractice action lies within the ambit of common knowledge or experience of ordinary persons," which is not the case here, "the plaintiff must establish the controlling standard, as well as the defendant's failure to adhere to that standard, by expert opinion testimony."  Id.

> The reason for the requirement of expert opinion testimony in most medical malpractice cases is obvious: matters relating to medical diagnosis and treatment ordinarily involve a level of technical knowledge and skill beyond the realm of lay knowledge and experience.  Without expert opinion testimony in such cases, the trier of fact would be left with no standard at all against which to evaluate the defendant's conduct.

Id.

Plaintiffs listed two neurosurgeons as witnesses and called both to testify.  The first was Plaintiffs' expert witness, Henry Fieger, M.D., a neurosurgeon qualified to

3

testify regarding the surgical removal of herniated disc material.[1] The second neurosurgeon to testify was the defendant, Dr. Miller.

### A. Plaintiffs failed to present sufficient evidence from which a reasonable jury could find that Dr. Miller breached any standard of care during surgery

Dr. Miller, during his testimony, did not concede to breaching any duty of care owed to Mr. Lovell. And Dr. Fieger testified that he did not know "what caused Mr. Lovell's nerve root injury," nor did he know whether the injury "was due to some surgical impropriety or mistake." (Trial tr., Day 2, 14:44:58 to 14:45:18; see also id. at 15:07:20 to 15:07:42.) Moreover, Dr. Fieger stated at trial that he was not "express[ing] any opinion about . . . what [he thought] went wrong in the surgery." (Id. at 14:34:48 to 13:34:56.) It was Dr. Fieger's assumption, instead, that sometime after the surgery and by the time Mr. Lovell reached the recovery room, "something happened." (Id. at 13:35:36 to 13:36:42.) Moreover, Dr. Fieger agreed that injury to the nerve root could occur during this type of surgery even without any negligence. Based on this evidence, a reasonable jury could not find that Dr. Miller was negligent in the manner in which he performed the surgery.

### B. There was insufficient evidence from which a reasonable jury could find that any post-operative standard of care Dr. Miller breached caused Mr. Lovell's injuries

Dr. Fieger testified that Dr. Miller breached the relevant standard of care immediately after surgery, when the foot drop was discovered, because Dr. Miller did not take Mr. Lovell back into surgery immediately in order to "make sure that there was

---

[1] The Court qualified Dr. Fieger as an expert in performing discectomies generally, but not as an expert in the surgical approach that Dr. Miller took in this case to gain access to the herniated disc, because Dr. Fieger had never performed a discectomy using that approach, nor had he been trained as to that approach.

not a correctable reason for this foot drop." (Id. 13:48:48.) But Dr. Fieger further testified that he did not know what had caused the foot drop, and that there was no evidence suggesting that, even if Dr. Miller had taken Mr. Lovell back into surgery, Dr. Miller would have found something that he could have corrected to minimize Mr. Lovell's nerve injury. Thus, Dr. Fieger could not "say with reasonable medical probability that reoperating would have disclosed a correctable problem which would have reversed the neurological deficit and the subsequent impairment." (Id. at 14:46:52 to 14:47:12.)

Dr. Fieger testified that, alternatively, Dr. Miller breached the relevant standard of post-operative care by not at least obtaining "an imaging study, such as a CAT scan or MRI, in an attempt to see if there was some structural problem causing this weakness" in Mr. Lovell's foot. (Id. at 13:49:42 to 13:49:54.) But Dr. Fieger again went on to testify that he "ha[d] no idea" what Dr. Miller would have accomplished had he obtained an imaging study immediately after the surgery. (Id. at 13:51:18 to 13:51:40.)

Based on this evidence, a reasonable jury could not find that Dr. Miller's breach of the standard of post-operative care caused Mr. Lovell's foot drop. "To prove causation in a [medical malpractice] negligence case, the plaintiff must show by a preponderance of the evidence that the injury would not have occurred but for the defendant's negligent conduct." Kaiser Found. Health Plan of Colo. v. Sharp, 741 P.2d 714, 719 (Colo. 1987). Ordinarily "[t]he existence of a causative link between the plaintiff's injuries and the defendant's negligence is a question of fact, and it is within the province of the fact-finder to determine the relationship between the defendant's negligence and the plaintiff's condition." Id. (citations omitted). But that is the case only if "the evidence establishes such facts and circumstances as would indicate a

5

reasonable probability that causation exists." Id. (internal quotation marks omitted). "To create a triable issue of fact regarding causation in a medical malpractice case, the plaintiff need not prove with absolute certainty that the defendant's conduct caused the plaintiff's harm, or establish that the defendant's negligence was the only cause of the injury suffered. However, the plaintiff must establish causation beyond mere possibility or speculation." Id. (citation omitted). The Lovells failed to do that in this case. See Conrad v. Imatani, 724 P.2d 89, 92-93 (Colo. Ct. App. 1986) (granting defendant summary judgment on medical malpractice negligence claim because plaintiff failed to present any expert testimony that her pain was caused by defendant's negligence); Smith v. Curran, 472 P.2d 769, 770-71 (Colo. Ct. App. 1070) (upholding directed verdict for defendant in medical malpractice case where plaintiff failed to present any expert testimony on issue of the cause or source of a post-operative infection, because those "are matters within the field of medical experts"); see also Williams v. Boyle, 72 P.3d 392, 397-98 (Colo. Ct. App. 2003) (concluding expert testimony was necessary to establish that prescribed medication caused plaintiff's kidney damage, because "relationship between the kidney damage and the prescribed medication is not so clear that a lay person would be able to conclude that the medication caused the damage without expert testimony").

     Dr. Fieger also testified that Dr. Miller breached the standard of care by failing to note, in his post-operative report, that he observed during the surgery that Mr. Lovell's L5 nerve root was compressed, swollen and very attenuated. But Dr. Fieger conceded that this breach of the relevant standard of care did not result in any consequence to Mr. Lovell.

For these reasons, then, a reasonable jury could not find for Mr. Lovell on his negligence claim and Dr. Miller is, therefore, entitled to judgment as a matter of law on that claim.

### IV.  DR. MILLER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF MONICA LOVELL'S CLAIM FOR LOSS OF CONSORTIUM

Because "[a] loss of consortium claim is derivative of the underlying injury claim," Schwindt v. Hershey Foods Corp., 81 P.3d 1144, 1148 (Colo. Ct. App. 2003) (citing Lee v. Colo. Dep't of Health, 718 P.2d 221 (Colo. 1986)), and because the Court has concluded that Plaintiffs failed to present sufficient evidence from which a reasonable jury could find that Dr. Miller's negligence caused Mr. Lovell's foot drop, Dr. Miller is also entitled to judgment as a matter of law on Plaintiff Monica Lovell's claim for the loss of Mr. Lovell's affection, society, companionship, and comfort resulting due to his injury.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Dr. Miller judgment as a matter of law on all of Plaintiffs' claims and directs the clerk to enter judgment accordingly.

Dated this 12th day of September, 2012.

BY THE COURT:

s/ David M. Ebel

_____
UNITED STATES DISTRICT COURT